If your attention, you will be heard. God save these United States and this Honorable Court. Please be seated. Good morning. We have a few cases that are being submitted on the briefs this morning. Those are 21-70398, Luis Osvaldo Jimenez Ochoa v. Pamela Bondi. Number 25-10, Rusty Aaron Eli v. Frank Bisignano, 25-243, Rozzy Penn Lee v. Frank Bisignano, and 25-302, Cheryl A. Allen v. Frank Bisignano. In accordance with the respective orders previously entered on the dockets of those four cases, those four cases are hereby submitted on the briefs. We will then proceed to hear argument in the second case on calendar for argument this morning, which is 24-7662, Darren Willert v. Frank Bisignano, and we will hear first from Mr. Dellert. Good morning, Your Honors. Christopher Dellert representing Darren Willert, the appellant in this case, and I would like to reserve a minute for rebuttal if possible. So Mr. Willert suffers from several severe impairments, including a liver disease. One of the symptoms of the liver disease is that he retains a lot of fluid. The result of this is that if he stands, walks, or sits upright for too long, he begins to get swelling in his legs and his feet. To alleviate that, he has to raise his feet to or above his heart level. He's taken numerous steps to address this, including lifestyle changes of no longer drinking. He's adjusted his salt intake. So what's the basis on which he was later found to be disabled in 2021? Because as I understand it, what's at issue here is the two-year period from 2019 to 2021. So he has his benefits from 2021 forward, and it's just a question of whether he gets the two years prior. And the basis on which he was found disabled in 2021? He gritted out through the medical vocational guidelines as of age 50. So that's what the... Because he was limited to sedentary work with this residual functional capacity with the additional limitations, the sedentary work gritted him out, so he was automatically disabled in the regulations. So as I was saying, he has taken numerous lifestyle changes to address some of the symptoms. The one most relevant here is his use of diuretics. With the diuretics, that causes him to need to use the restroom every 15 to 20 minutes for several hours after taking the medications. Now at the hearings, the vocational consultants have testified that the need for frequent restroom breaks outside of the normal breaks would be preclusive of work, as would elevating the knee feet. One way to read this record is that the ALJ actually didn't agree that the edema was ultimately something that... I mean, it's labeled as a severe condition, but that ultimately wasn't of such a magnitude as to warrant anything. And then he just gratuitously added, well, I'll give him the eight inches because that's the maximum I can give him without him tipping over into disability. It's kind of a very odd sort of ruling, but he goes through Dr. Park and sort of rejects it and then notes that there are other places in the record where the edema doesn't show up. So it seems like he doesn't really give it any weight, but then he tosses this in. So you could view it as error, and the government argues you could view it as error, but it's harmless error because he gratuitously added a limitation that he actually thought wasn't warranted. But on three separate occasions in the decision, he said he was adding this limitation to address the swelling in his legs. So if he meant to do something different, he did not articulate it in a manner that can be affirmed. He said he needs to elevate his legs because of swelling, and then he chose eight inches solely based on the vocational testimony. There's no medical, it just flies in the face of medical science to say only eight inches, where putting a foot on an inch step would actually increase the swelling because it makes it harder for the blood to get. In order to be viewed as harmless error in the government's theory, the ALJ would have had to say that nothing was warranted, but I'm going to do it. But he actually found that something was warranted, but then arbitrarily picked eight inches. Yes, Your Honor, and unfortunately it wasn't arbitrary. It was something that he and the vocational consultant worked down to, to find where can we fit that. If you wanted to say— Is there any other suggestion in the record for the line at eight inches, other than that the vocational expert said that that was the tipping point? Absolutely not. Is there evidence the other way? I know other than what Mr. Willard testified, did any medical professional say his feet have to be, has to be elevated near his heart? Unfortunately, the steps that would reduce the edema were never discussed in the medical record. I mean, it's just kind of a common knowledge thing. The only thing that could have been done differently to address that and the restroom use was to call in a medical consultant who could say, yes, a person with edema needs to lift their legs this high, this low does not work because of X. Similarly, a person taking diuretics is going to use the restroom all the time while still in their system. And both of those are determinative limitations, either or. Together they make it just impossible to work. So calling a medical consultant could have cleared that, but otherwise you have to take Mr. Willard's word that he lifts his legs up that high because it needs to get the fluid back where it belongs. It seems like what happened is the ALJ says there's very little evidence after February 2019 of severe edema. You know, earlier, yes, but after February 2019, less. And you know, there's no testimony, I don't know, you know, again, I'm not a medical expert, but you know, if the ALJ isn't either, there's no testimony about how high it should be. So he thinks maybe it's minor and settles that at eight inches without that testimony saying this is how high it needs to be. He testified on several occasions how high he needs to be. Yeah, I understand. But nobody else had. Yes. I understand, Mr. Willard, but there's no medical, independent medical testimony. No, unfortunately, nobody came right out and said that this is what he needs to do. Would you tie your argument into the standard of review? Because we might think what you're saying is entirely reasonable, but our hands may be tied by the standard of review. Well, he needs to give specific, clear and convincing reasons for rejecting, supported by substantial evidence for rejecting Mr. Willard's allegations in these. He needs to link the evidence that he's talking about to the allegations that he's rejecting. That's under Smith v. O'Malley, I believe. There has to be a link between the evidence and the finding, and there's no, there's nothing there. And in particular, there's nothing there when it comes to the use of the restroom either. So the ALJ summarized the evidence, but he never linked it to why he was, he never specifically linked it to why he was rejecting this particular allegation in favor of just lifting the feet eight inches. Is there anything in any of the medical reports that substantiated that claimed frequency or that referred to it in any way? Unfortunately, no, but part of the problem is the edema is something that comes when he's in a position for a sustained amount of time and he's no longer working and he's spending most of his time in his recliner or in his bed or on his couch. So he's not having the same frequency of symptoms just because he's not putting himself into that kind of a position any longer. If there are no other questions. Fine. You can save the rest for rebuttal. All right. Thank you, sirs. Okay. We hear from the government. Mr. Nelson. May it please the Court, Counsel Lars Nelson on behalf of the Commissioner of Social Security. This Court should affirm the decision of the ALJ because it is supported by substantial evidence and free of prejudicial legal error. I would like to go begin with that leg lifting limitation. There doesn't seem to be a mismatch here because the ALJ seems to sort of discount the edema entirely, but then out of nowhere puts in the eight-inch limitation and the inference is almost inescapable from the record that he just plucked it because the VE said it was the tipping point. This seems quite arbitrary. Well, the ALJ doesn't prejudice Mr. Willer out of an abundance of caution, including the limitation that he must be allowed. Not that he must. The problem is, and what's your response to counsel's argument, is that that's not how the ALJ put it. The ALJ, in fact, said that there was an issue that needed to be dealt with, but that he was capping it at eight inches. So he tried to have it both ways, so once the ALJ treats it as there is something to be dealt with, then the arbitrariness of the line becomes a problem. If he had just said, you know, there isn't enough evidence that edema is a sufficient problem that it needs to be accounted for in the RFC, then maybe that would have been supported by substantial evidence, but it just wasn't written that way. Well, Your Honor, I think what we have to distinguish is between severe edema, which the government doesn't dispute. Somebody with severe edema may very well have to sit in a reclined position. Maybe you're using severe in a different sense than the... Not in the step two sense. Step two sense, right. Yes, Your Honor. It would be four plus pitting edema, because the edema's on a scale of one through four. That person would have to have their legs elevated, but in this case, Your Honor, there were only two instances where edema was observed by Dr. Park, and that was one plus pitting edema in February of 2019, and then the very next month, he noted that it was improving, and then in November of 2019, Mr. Park noted that it was not uncomfortable from the fluid accumulation. So what we had here was not significant edema. What we had here was very mild edema that he then didn't report to all the other doctors. The ALJ goes through the very limited record here and notes when doctors were specifically not calling out edema. He notes when the records are silent on it. So the ALJ is aware of this issue all the way through, and so what the ALJ included was a prophylactic limitation that corresponds with the very limited record here of edema. And under the standard of review, the ALJ's decision is reviewed for a reasonableness determination. Was it reasonable for the ALJ to find that this limitation was supported? And in light of the largely absent evidence of edema in this case, the ALJ could reasonably assume, just as every airline charges premium money for, that a little extra legroom, having your feet slightly elevated, is more comfortable. And the option of that would relieve what little concerns Mr. Willert had about his edema in this case. And Your Honor, I would also point that the Commissioner noted that even if the ALJ had no basis for this limitation whatsoever, and it was just gratuitously put in, that in no way prejudices Mr. Willert, because the ALJ provided very sound reasons for rejecting greater limitations. And it's ultimately Mr. Willert's burden to prove what limitations should be in the residual functional capacity assessment. I would note that it's also not necessary here that the ALJ tie the RFC to any medical opinion, because as this Court has said in Rounds v. Commissioner of Social Security, the ALJ is equipped to translate medical evidence into a residual functional capacity assessment. Here's the problem that I have. So say, for example, this comment from the ALJ, looking at 544 of the administrative record, page 11 of the decision, he says, for the reasons discussed above, the claimant is unable to perform the demands found by the medical consultants. Here's where he's talking about the earlier state agency medical consultants. In particular, given his chronic leg edema, he is unable to stand or walk for long and must sit and elevate his feet by eight inches. So it's not done as, let me throw something in gratuitous. He has to do this. This is why I'm rejecting the state medical opinion. So he seems to have rested on the ground that there is something here that must be dealt with, but I'm going to just make up a limitation that is the border and kind of makes no sense because it's not high enough to actually move any fluid back. Well, Your Honor, I think what it is is a prophylactic. And that is, yes, if somebody has significant edema where their legs are very swollen, yes, they would have to have their heart, their legs elevated above their heart. But in this case, when Mr. Willett was showing up to doctors, after March of 2019, they simply were not observing any of this edema. So the ALJ, out of an abundance of caution, tempered that state agency opinion in Mr. Willett's favor by including this additional limitation. And then the ALJ said, must be allowed. So not that he must do it, but he must be allowed. And under Kaufman, this court has to, in interpreting the ALJ's decision, read the ALJ's decision holistically. So we have what the RFC says. We have what the ALJ discusses in terms of the state agency doctor, as Your Honor pointed out. We also have, when he discusses Dr. Park's opinion, indeed, Dr. Park said that this leg elevation limitation was due to severe edema, which the ALJ pointed out. There are only two instances where Dr. Park noted edema, and then thereafterwards, he denied edema, and it just simply wasn't seen. Your friend on the other side suggested that it's common knowledge that if you have edema, you have to elevate your legs pretty high. Do you agree with that? Well, I mean, again, the government doesn't dispute that some people might have edema that is so severe that it has to be, they have to elevate their legs above their heart. But the commissioner does not dispute, does not concede on this record that such a limitation was necessary, because there was very, there was only mild edema observed, and only for a narrow two-month period, and a period that was already exceptionally narrow. Indeed, after March of 2020, he pursued no treatment whatsoever in this case. I mean, if the ALJ had said that he doesn't need any leg elevation at all, this would be, frankly, an easier case. That'd be substantial evidence would support that judgment. He just didn't write it that way, and we can't, under Chenery, pretend that that's what he did. It's not what he wrote. Well, we have two issues here. Did the claimant meet his burden of showing greater limitations? And it's clear that he did not, given the fact he denied having problems, and the fact that the ALJ properly discounted any medical opinion that might support greater limitations. And then the question is, did the ALJ prejudicially err by including the limitation that the ALJ did? And in this case, consistent with Johnson v. Shalala, even if it was unsupported, even if it was an ill-conceived prophylactic, the claimant simply is not burdened by its inclusion, because he can still work with its inclusion in there. Let me just ask a procedural question. Just hypothetically, suppose we were to conclude that there was a defect here. Does it have to go back a third time now, or would we just order benefits, or what would we do with that? Well, the argument, I believe, is that if the ALJ erred, then it stands to reason that the only limitation that would be justified is legs elevated above the heart. And it would be the commissioner's position that that is not supported by the concessions here. It's not supported by the ALJ's – In other words, it would have to go back for a third – It would, Your Honor. The ALJ would decide whether any edema restriction was warranted at all. It would, Your Honor. But again, it's the commissioner's position. There's no prejudice. I understand. But I want to understand how the decision tree would work, depending on whichever way we go. Yes. And I will note that the commissioner said that Johnson v. Shalala was controlling here in our answering brief, and that response was not addressed in the reply brief. And – Can you, before your time runs out, can you briefly address the frequent urination? Because he testified because of his medicine, he has to go to the bathroom frequently. The ALJ opinion doesn't seem to address that at all. Well, the ALJ specifically addresses the allegation at the top of 541. So – Yeah, it mentions it, but doesn't discounter or, you know, doesn't explain why, you know, that's not being accommodated. I think, then, this is squarely within the Bayless analysis. The ALJ had very few records here. The ALJ summarized all the records. It's conceded that at 24 of the opening brief that there is no medical evidence. So given that – This one seems much more common sense. If you're taking diuretics, you know, that's – part of it is you go to the bathroom often, you know, you drink coffee, you go to the bathroom often. If you're taking medicine, prescribed medicine, you will probably have to go to the bathroom pretty often. He testified to that. So it seems like this is, you know, much lesser than – much more so than the DEMA and elevation – how high your feet have to be elevated. It seems like if you take diuretics, you'll have to go to the bathroom often. I mean, he alleged a profound limitation of every 15 to 20 minutes for six hours. And that is wholly unreflected in the medical record. He's never reported that as a complaint. And the medical record is silent on that issue. Medical record is, but there's other evidence in the record of frequent urination, of multiple trips and has to go to the bathroom. His brother-in-law or brother? Well, his brother only mentioned it at 2.58 as it's occurring that night. And in this case, consistent with Bayless, when we have a side effect from a medication that is simply not complained about or reflected in the medical record, the ALJ could – really had nothing further to discuss. The ALJ found that – acknowledged the allegation, went through the medical record, which is silent, and then ultimately found it didn't support additional limitations. And the ALJ provided other reasons for discounting his brother's testimony that really aren't challenged on appeal. And unless this Court has any further questions, the Commissioner would ask this Court to affirm. All right. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honors. First I want to address the frequent urination. That wouldn't be reported as a side effect because that's the actual reason that you use the Lasix, is you're using it to eliminate excess water. As I mentioned in the briefing, the questionable part came when he wasn't – when he was using Lasix but was not urinating very often. That's when it was remarkable and they adjusted his dosages to address that and that – after that it's not mentioned again. It's just – it's going to be an issue that he has to deal with, especially if he's in a position where he's going to be having his legs down, he's going to need to get rid of more fluid. So at the end of the day, the ALJ didn't – yeah, the ALJ summarized the medical evidence, but he never even attempted to attach it or draw a path between the evidence and that testimony. So he's never addressed that issue. There's nothing – there's no finding to be affirmed in that issue. It's clear error. And that's independent of the raising legs. That issue can determine whether or not he's disabled as the vocational testimony has already addressed it. Too many trips to the restroom, you're going to be away from the workspace, you cannot maintain employment. So using either error is going to result in Mr. Willard being found disabled. It seems pointless to go back for a third hearing now, what, four – five years after he's already been found disabled for a limited period of time in which there's no new medical evidence to be gained and the only thing that you can really do is just call upon a medical consultant to confirm that these are going to be issues that he's going to deal with. So our position is that Mr. Willard should be found disabled. This decision should be reversed and he should be remanded for payment of benefits for that close period of time.
judges: COLLINS, LEE, Fitzwater